[Civ. No. 24228. Fourth Dist., Div. One. Oct. 26, 1981.]

In re THOMAS S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
THOMAS S., Defendant and Appellant.

Counsel

Richard A. Derevan, under appointment by the Court of Appeal, and Wenke, Taylor, Evans & Ikola for Defendant and Appellant.

George Deukmejian, Attorney General, Robert M. Foster and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WIENER, J.**—This appeal by a minor from an order committing him to the California Youth Authority (CYA) involves a facet of *Arbuckle* (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 756-757 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]) not previously explored.

*Arbuckle* held that an implicit term of a plea bargain is the trial judge who takes the plea will also be the sentencing judge. (*Id.*, at pp. 756-757.) *In re Ray O.* (1979) 97 Cal.App.3d 136 [158 Cal.Rptr. 550], applies the *Arbuckle* rationale to juveniles. Accordingly, absent a "*clear waiver*, whenever a juvenile enters a plea bargain before a judge he has the right to be sentenced by that same judge." (*Id.*, at pp. 139-140; italics supplied; fn. omitted.) The issue here is what constitutes a "clear waiver." As we will explain, although we believe a procedure at some stage of the juvenile proceedings which advises the minor that if he enters into a plea bargain he has the right to have the same judge at his dispositional hearing is an effective method of resolving the question of an *Arbuckle* waiver, we decline to impose that procedure as a requirement for all juvenile cases. We reach this decision because of the inadequacy of the data before us, our conclusion that an *Arbuckle* waiver may be inferred from the record, and our determination this issue is best resolved by entities other than an intermediate appellate court. Because this record is unclear, we decide to affirm the order without prejudice to further habeas corpus proceedings to resolve the *Pope* (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 432, 590 P.2d 859, 2 A.L.R.4th 1]) issue underlying counsel's willingness to forego his client's *Arbuckle* right permitting a different referee to preside at the minor's dispositional hearing.

### Factual and Procedural Background

In 1979, two petitions were filed against Thomas S. in juvenile court. In October, a true finding of grand theft against a person (Pen. Code, § 487, subd. 2)[1] was made under the first petition. Thomas was placed on probation and sent to the San Diego County Juvenile Ranch Facilities at Campo. True findings of receiving stolen property (§ 496, subd. 1) and using force against two probation officers (§ 242), both misdemeanors, were made on the second petition and Thomas again received

---

[1] All statutory references are to the Penal Code unless otherwise specified.

probation and was placed in Boy's Republic (a 24-hour facility) for 30 days.

In February 1980, a third petition was filed and a true finding of misdemeanor escape (Welf. & Inst. Code, § 871) from Boy's Republic was made; probation was continued; and, he was returned to Campo. In April, another petition was filed for misdemeanor escape and a true finding made. Thomas was sent to CYA for a 90-day diagnostic study, returned and detained at juvenile hall, and granted probation with his father. On September 16, 1980, another petition was filed alleging Thomas fought and used offensive language in public (§ 415, subds. (1), (3)), both misdemeanors. The petition stated, "[These] offenses ... may result in the violation of any probation previously granted and the imposition of any previously unexpired term of detention."

At the jurisdictional hearing, the public fighting allegation was dismissed in exchange for Thomas' admission he used offensive language in public. Before the referee pro tempore accepted his admission, however, he twice advised Thomas of his rights to counsel throughout the proceedings, to trial, to proof of guilt beyond a reasonable doubt, to confront witnesses against him, to remain silent, and to subpoena any witness to testify on his behalf. The court further explained to Thomas by admitting the allegation he was subjecting himself to the possibility of being committed to CYA for not only the 90-day term designated for using offensive language in public, but also for terms he had not served on the previous cited petitions. The court then meticulously went through each of those petitions asking Thomas if he admitted or was found to have committed the offenses in each, and setting forth the amount of time which could be added to his term due to each offense. After satisfying himself Thomas understood the consequences of his admission, the referee accepted the admission and found Thomas had used offensive language in public.

At the dispositional hearing, a different referee pro tempore presided and on several occasions invited Thomas' counsel to argue against using the previous offenses to aggregate his maximum term of commitment and offered him as much time as he needed to prepare such arguments. Thomas' counsel declined, submitting the matter to the court on his contention aggregation could not occur absent the filing of a timely Welfare and Institutions Code section 777 petition. The court then set the maximum term of confinement at three years, nine months—three

years for the 1979 grand theft, plus one-third of the maximum terms for the four misdemeanors. (See Welf. & Inst. Code, § 726.)

*Discussion*

█ In *Arbuckle, supra*, 22 Cal.3d 749, 756-757, the Supreme Court said: "As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea." The court's phraseology, specifically its failure to use the personal pronoun in accepting a plea, is immaterial. (*People v. Pedregon* (1981) 115 Cal.App.3d 723, 725 [171 Cal.Rptr. 468]; *People v. DeJesus* (1980) 110 Cal.App.3d 413, 419 [168 Cal.Rptr. 8]; *People v. West* (1980) 107 Cal.App.3d 987, 992 [165 Cal.Rptr. 24]; *In re Ray O., supra*, 97 Cal.App.3d 136, 139.) Further, like most other rights, it may be waived. (*People v. West, supra*, 107 Cal.App.3d at p. 992; *In re Ray O., supra*, 97 Cal.App.3d at pp. 139-140, fn. 2.)

The question, however, of whether the juvenile court judge accepting a juvenile's plea is obligated to advise him of his right to the same judge at the dispositional hearing is of first impression. Neither court which discussed the issue of whether the *Arbuckle* right was waivable addressed this precise query. Moreover, in the recent decision of *In re James D.* (1981) 116 Cal.App.3d 810, 815-819 [172 Cal.Rptr. 321], the court held that a juvenile waives his due process right of not having the same judge, who held his fitness hearing, to preside over his jurisdictional hearing where he and his counsel failed to object to that procedure. Once again, however, the court did not address our query.

█ It is firmly established that the first requirement of any waiver of a statutory, constitutional or, here, a hybrid, judicially promulgated contractual right is that it be knowingly and intelligently made. (*In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].) Consequently, a "valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived. [Citations.]" (*Jones v. Brown* (1970) 13 Cal.App.3d 513, 519 [89 Cal.Rptr. 651].) In other words, "[o]ne can waive only that of which he is aware and cannot waive that of which he is ignorant." (*People v. Connor* (1969) 270 Cal.App.2d 630, 634 [75 Cal.Rptr. 905].)

In order to assure "criminal defendants that the full panoply of constitutional and statutory rights provided by our system of criminal justice is available to them and . . . to insure that any waiver thereof by defendants is both voluntary and intelligent," our Supreme Court has held that trial courts must advise defendants of certain rights although those rights included nonconstitutional ones as well. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605-606 [119 Cal.Rptr. 302, 531 P.2d 1086].) In *People* v. *Johnson* (1974) 10 Cal.3d 868, 871-872 [112 Cal.Rptr. 556, 519 P.2d 604], the Supreme Court held that where the trial court withdrew its approval of a plea bargain and failed to advise the defendant of his right to withdraw his plea pursuant to section 1192.5, the defendant should not be held to have waived this right although neither he nor his counsel requested the court to withdraw his guilty plea after the bargain was disapproved. The court simply stated: "Thus, we believe that . . . [defendant's] failure affirmatively to request a change of plea should not be deemed a waiver of his right to do so. Since he was never advised of his rights under section 1192.5, he should not be held to have waived them." (*Id.*, at p. 872; fn. omitted.)

Guided by this precedent, we conclude a juvenile court should advise a minor of his *Arbuckle* right during the jurisdictional hearing or at the commencement of the dispositional hearing if another judge is presiding. We believe doing so will not unduly burden the courts for the additional administrative burden is outweighed by the benefit of assuring that any waivers will be of a voluntary and intelligent nature. (See *Bunnell* v. *Superior Court, supra*, 13 Cal.3d at pp. 604-606.)

We have deliberately chosen the nonobligatory phrase "should advise" deciding against our establishing a rule for all juvenile cases which would require the *Arbuckle* admonishment to be given with the express waiver from the minor to be reflected on the record. Because our perception of the need may be inaccurate, we believe a decision on this issue is better left to the Judicial Council with an appropriate amendment to the juvenile court rules, the Supreme Court or to the local presiding judges with the concurrence of those judges sitting in juvenile court.

Comprehensive rules applicable to juvenile court proceedings were adopted after a thorough study by the Judicial Council effective July 1, 1977. (See Juvenile Court Rules, rule 1301 et seq.; see also Cal. Const., art. VI, § 6.) These rules, enacted in order to provide statewide uniformity, include provisions requiring the minor be told of his right to

counsel; the right to trial by the court on the issues raised by the petition; the right to remain silent; the right to confront and to cross-examine any witnesses; and the right to use the process of the court to compel the attendance of witnesses on his behalf. (See Advisory Com. com., West's Ann. Code, rule 1301, pp. 203-204; see rules 1324, 1325, 1353, and 1354.) Whether these definitive rules should be revised is best examined by the Judicial Council after hearing to permit an empirical determination of whether there is a real need. We do not wish to suggest we are shy to make changes where appropriate, but the extent of the problem and the need for change here should be left to the entity equipped to ascertain the nature of the statewide problem, if any, and the type of amendment necessary to resolve that problem. Moreover, with the expertise of the bench and the increasing sophistication of lawyers handling juvenile matters, we are reluctant to add another element, perhaps unnecessary, to the required script before a plea bargain can be made.

Underlying our decision also is our determination that an *Arbuckle* right may be waived by conduct. Unlike the constitutional rights of the privilege against self-incrimination, right to trial by jury and the right to confront witnesses (*In re Tahl* (1969) 1 Cal.3d 122, 131-133 [81 Cal.Rptr. 577, 460 P.2d 449]), we believe the administration of justice is best served by permitting an inference from statements of facts from the record from which a reasonable presumption can be drawn that the juvenile was apprised of and voluntarily waived his *Arbuckle* right, or in the alternative, he has made the tactical choice of hoping to receive better treatment from a different judge.

We are in no position to speculate on what percentage of records will clearly reflect an *Arbuckle* waiver in the absence of an admonishment. At least where an admonishment is given and the minor permits a disposition before another judge, a reasonable inference can be drawn that the choice was intelligently and voluntarily made. Where there is no admonishment, however, the permutations of what might have occurred between the minor and his counsel are interesting. For example, where counsel was aware of the *Arbuckle* right but failed to explain that right to his client, the following is possible: (1) Counsel was negligent in failing to advise his client, but his client preferred another judge anyway; (2) counsel was negligent in failing to advise his client, but counsel elected to appear before another judge because of strategic considerations; or (3) counsel was negligent in failing to advise his client, his client wanted to stay before the same judge who accepted the plea bar-

gain and there was no tactical reason in making the choice. It is even possible to hypothesize a case where neither the minor nor his counsel are aware *Arbuckle* exists, but both prefer to appear before a different judge. In the interest of brevity, we will not list other possibilities. Suffice it to say, the fact the minor appears before a different judge is not dispositive of the issue unless the record supports a finding that the *Arbuckle* right was known before that appearance.

We are aware that our unwillingness to equate the appearance before a different judge as being equivalent to an *Arbuckle* waiver raises the spectre of a *Pope* issue being raised in every case where there has neither been an admonishment nor evidence supporting the waiver. Again, we will not speculate on the number of cases the trial court, either concurrently with the appeal or postappeal, will be called upon to hear and decide as a result of this holding. We presume, without suggesting particular expertise in supply-side economics, that if there are sufficient cases arising because of this problem, the pressures on the trial court may cause the presiding judge to transfer that burden to the juvenile court requesting the *Arbuckle* admonition be given in that court before the dispositional hearing. Our determination that it is inappropriate for us to establish a general rule requiring an *Arbuckle* advisement is in part based on our confidence that the marketplace, here the local courts, will efficiently adjust and place that obligation on the proper court.

■ The case before us is illustrative of the possibilities that we have previously touched upon. The record does not affirmatively show that either the minor or his counsel understood or agreed to raise the *Arbuckle* right. The fact that the Welfare and Institutions Code section 777 argument was renewed before a different referee at the dispositional hearing is not determinative. This was not the typical hearing involving the second bite at the apple. Counsel's argument was prompted by a new appellate opinion, *In re Michael H.** (Cal.App.), filed September 17, 1980, and published in the advance sheets only three days before the dispositional hearing. Certainly the renewed motion would obviously have been made even in front of the original referee, for it would have been an abuse of discretion not to allow such renewal in the face of newly published authority arising out of this appellate district. Moreover, the minutes of the proceeding before the first referee

---

*Reporter's Note: Deleted on direction of Supreme Court by order dated November 19, 1980.

reflect his view that an out-of-state placement with relatives would be a good solution for the minor. The referee continued the matter to allow this to be explored by defense counsel. This alternative was not only explored, but was fleshed out and presented to the dispositional judge who rejected it out of hand. Accordingly, on this record, there may have been prejudice by counsel's failure to exercise the minor's *Arbuckle* right. Because these factual issues cannot be reached in this appeal, our affirmance is without prejudice to further trial court proceedings on this issue.

*Disposition*

The order is affirmed.

Cologne, Acting P. J., and Work, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1981. Bird, C. J., was of the opinion that the petition should be granted.